**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

DEREK CABRAL, et al.,

Plaintiffs,

v.

CITY OF CORCORAN, et al.,

Defendants.

Case No. 1:26-cv-02950-KES-EGC

**ORDER DIRECTING FILING OF THE SECOND AMENDED COMPLAINT AND SERVICE OF THIS ORDER ON PLAINTIFFS**

**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFFS' COMPLAINT BE DISMISSED WITHOUT FURTHER LEAVE TO AMEND**

(Doc. 26)

FOURTEEN-DAY (14) DEADLINE

On April 20, 2026, Derek Cabral, Amanda Cortez, and Cynthia Erwin ("Plaintiff"), proceeding *pro se*, filed a complaint against the City of Corcoran and its officials (Mayor Sidonio Palmerin, Vice Mayor Jerry Robertson, Council Members Greg Ojeda, Patricia Nolen, Jeanette Zamora-Bragg, City Manager Tina Gomez, Public Works Director Jospeh Faulkner, Code Enforcement Jimmy Roark, Utility Billing Michael Marquez and Christine Campos, City Clerk Marlene Spain) (collectively "Defendants"). (Doc. 1 ("Compl.") at 1). Plaintiffs also filed applications to proceed *in forma pauperis*, which were granted on June 5, 2026. (Docs. 6, 7, 8, 12).

On June 10, 2026, the undersigned screened the original complaint and found that it failed to state a claim. (Doc. 13). The undersigned gave Plaintiffs several options by which they could

proceed, including filing an amended complaint, which the Court would screen in due course. On June 25, 2025, Plaintiffs filed an amended complaint. (*See id.* at 6). On August 6, 2026, Plaintiffs submitted a second amended complaint (SAC). (Doc. 26 ("SAC")). While the Court did not grant Plaintiffs leave to file a second amended complaint, the undersigned will order the Clerk of Court to file the SAC and the undersigned will proceed with screening the SAC.

After reviewing the Plaintiffs' SAC, the undersigned finds that Plaintiffs have not remedied the deficiencies identified in the undersigned's initial screening order and therefore will recommend that the SAC be dismissed without further leave to amend.

## I. SCREENING REQUIREMENT AND STANDARD

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). *See also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); *Barren v. Harrington,* 152 F.3d 1193 (9th Cir. 1998) (affirming *sua sponte* dismissal for failure to state a claim). If the Court determines that a complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint may be dismissed as a matter of law for failure to state a claim

for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See, e.g.*, *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II. SUMMARY OF PLAINTIFFS' COMPLAINT

Plaintiffs' complaint names twenty-six defendants:

> City of Corcoran - Municipal corporation; Sidonia "Sid" Palmerin – Mayor; Jerry Robertson - Vice Mayor; Greg Ojeda - Council Member; Patricia "Pat" Nolen - Council Member; Jeanette Zamora-Bragg - Council Member; Tina Gomez-Interim City Manager; Joseph Faulkner - Public Works Director; Jimmy Roark - Code Enforcement Officer; Michael Marquez - Utility Billing; Christine Campos - Senior Account Clerk; Marlene Spain - City Clerk; Greg Gatzka - City Manager; Priscilla Castillo - City Operations; Kevin Tromborg - Building Official; Carrington Mortgage Services, LLC - Mortgage servicer; The Standard Fire Insurance Company (Travelers)- Insurance company; Matt Gentile - Travelers Adjuster. He issued the initial denials and admitted he did not read the federal lawsuit; Matt Knifton - Travelers Manager. He personally supervised, reviewed, and approved all three denials. He signed the supplemental denial letter. He is the decision-maker. He is personally responsible for the bad faith, fraud, and RICO violations; Alan Schnitzer - Travelers CEO. He oversees the company's policies and practices including the systematic denial of valid claims; Clay Smith - VA VRM Agent; Everhome Legacy Fund LLC - Fraudulent buyer; SellersNewDay - Fraudulent buyer; PrimeHomeBuyers (Beya Felix) - Fraudulent buyer; Gabriel Archuleta - Postmaster, in his official capacity; Jane Doe - Mail Carrier, in her individual and official capacity.

(SAC at 2–3). Plaintiffs state that subject matter jurisdiction is based on federal question, (*id.*), specifically invoking "42 U.S.C. § 1983, the Fourteenth Amendment, and RICO" (*id*. at 2).

As to Plaintiffs' factual allegations, Plaintiffs set forth several subsections of factual

allegations.

"The Property and Inheritance": In this section Plaintiffs allege that "Plaintiff Derek Cabral is the successor in interest under a valid holographic will" that is valid under California law and that this will resulted in title to Plaintiff Derek Cabral's residence to himself. (*Id.* ¶¶ 1–8).

"The Water War – Deliberate Indifference and Municipal Policy": Plaintiffs next allege that "[i]n mid-November 2025, the City of Corcoran shut off water to the property without notice or a hearing, acting under a municipal custom or policy of using utility shutoffs to force property displacement." (*Id.* ¶ 1). Plaintiffs further allege that the City "refused to put water in Derek Cabral's name as successor, "demanded 500-600/month to restore water, a fee not charged to other residents," "posted multiple shut-off notices on the locked gate and front door," "trespassed on the property," and "threatened condemnation without inspection." (*id.* ¶¶ 3–6, 8). Plaintiffs also allege that Jimmy Roark "posted [pretextual] code enforcement citations for weed abatement, vehicle abandonment, and zoning infractions." (*id.* ¶ 7). Plaintiffs further allege that the City "never contacted the County of Kings or any other regulatory agency regarding the biohazard, infestation, or uninhabitable conditions" at the property demonstrating deliberate indifference to Plaintiff's constitutional rights and "were executed pursuant to an official municipal policy or failure to train." (*Id.* ¶ 9, 11).

"The Foreclosure": Plaintiffs allege that Carrington Mortgage, failed to accept payments from Derek Cabral and inflated the debt associated with the property, only offered unaffordable repayment plans, recorded a notice of default, conducted a foreclosure sale, and sold the property "stealing over $105, 000 in equity. (*Id.* ¶¶ 1–7).

"The Insurance Bad Faith – Matt Knifton is the One": Plaintiffs next allege that "Derek Cabral filed a claim with Travelers under Vandalism and Malicious Mischief ("VMM")," a claim Travelers allegedly coded as "Miscellaneous," which Plaintiffs allege is not a "peril" that exists in the policy and is an indication of Travelers intentionally attempting to avoid coverage. (*Id.* ¶¶ 1–2). Plaintiffs allege that Travelers "sent a denial letter" to the deceased prior property owner, despite their knowledge of his dead, "intending to bypass Derek Cabral and exploit his pro se status." Plaintiffs then make several allegations regarding Matt Gentile, that he "admitted he did not read the federal lawsuit" or "know what VMM means." (*Id.* ¶¶ 4–5). Plaintiffs then allege that Travelers reclassified the claim to VMM, "an admission of coverage," but nonetheless denied the claim. (*Id.* ¶¶ 6–7). Plaintiffs next make several allegations as to Matt Knifton, alleging that he "personally signed the supplemental denial letter" that as addressed to the deceased prior property owner, that he "is the manager who supervised, reviewed, and approved all three denials" and that he is "the decision-maker" and "personally responsible." (*Id.* ¶ 8). Plaintiffs continue, alleging that Matt Knifton "CC'ed Carrington Mortgage services on the denial letter, proving coordination and collusion between Travelers and Carrington," that he "defendant the City of Corcoran's water shutoff in the denial letter, proving coordination and collusion between Travelers and the City." (*Id.* ¶¶ 9–11). Plaintiffs go on to allege that Travelers "raised 'occupancy change' as a new excuse" and "blamed Derek Cabral for the infestation," "refused to recognize the holographic will," and that "Travelers' intentional denial of the VMM claim directly starved Plaintiffs of emergency capital needed to repair the property, clear city code violations, and prevent constructive eviction," and further that Travelers' denial "was a direct proximate cause of Plaintiffs' financial ruin and loss of the property. (*Id.* ¶¶ 12–14). Plaintiffs conclude this section with allegations that "Travelers' conduct" constitutes Intentional Infliction of Emotional Distress." (*Id.* ¶ 15).

"The Fraudulent Buyers – Specific Forgery Details": Plaintiffs allege that "Everhome

Legacy Fund LLC forged Derke Cabral's signature on a purchase agreement," "SellersNewDay signed a $171,000 agreement and ghosted," and that "PrimeHomeBuyers continued contact after fraud – civil conspiracy." (*Id.* ¶¶ 1–3).

<u>"Mail Theft – Specific Dates, Tracking Numbers, and False Scan Codes"</u>: Plaintiffs allege that a Jane Doe (USPS mail carrier) "falsely scanned mail with the following specific false scan codes, dates, and tracking numbers: "No Access" - Tracking #7190 1034 6840 2054 1399 - February 6, 2026; Forward Expired' - Tracking #9589 0710 5270 1468 5793 40 - February 19, 2026, "Notice Left" - Tracking #9214 8969 0024 8400 0001 4371 77 - March 5, 2026, "Notice Left" - Tracking #9214 8969 0024 8400 0001 4371 91 - March 5, 2026, "Sorry We Missed You" -Tracking #9214856901234831771431711- March 10, 2026." (*Id.* ¶ 1). Plaintiff's allege that "[c]ertified mail was stolen and / or destroyed as a result of these false scans" and that "[d]enial letters and critical legal notices were sent to a deceased person and/or delayed, prejudicing Plaintiffs' legal rights." (*Id.* ¶¶ 1–2).

<u>"The Biohazard and Injury"</u>: Plaintiffs final section includes allegations that "[t]he water shutoff led to a severe infestation of rats roaches, fleas, and flies," that "[o]ver 50 rats were killed," "[t]he infestation destroyed personal property, vehicles, and . . . military memorabilia," "[t]he infestation created a biohazard and made the property uninhabitable," "Plaintiff Cynthia Erwin was injured when a rat jumped out from debris causing her to trip," "[t]he four dogs on the property suffered flea infestations and bald patches as a result of the biohazard infestation," and various other allegations of losses of property due t the infestation. (*Id.* ¶¶ 1–11).

Turning to Plaintiffs' legal claims, Plaintiffs bring the following claims:

(A) RICO (Racketeering)-18 U.S.C. § 1961 et seq. -Against All Defendants

(B) Civil Rights Violations - 42 U.S.C. § 1983 -Against City and Officials

(1) Due Process Violation - 14th Amendment;

(2) Equal Protection Violation - 14th Amendment;

(3) Fifth Amendment Takings Clause - Inverse Condemnation;

(4) "The individual City officials acted with deliberate indifference to Plaintiffs'· constitutional rights. The water shutoffs and targeted code enforcement harassment were not random acts but were driven by an official municipal policy, custom, or failure to train city staff (*Monell* Claim)

(C) California Water Code Violations - Against City of Corcoran

(1) CA Water Code § 13845 - Liability for unlawful discontinuance;

(2) CA Water Code§ 13850- Penalties (1,000/day x approximately 330 days =approximately 330,000 per plaintiff, for a total of approximately $990,000 for all three Plaintiffs)

(D) Bad Faith - CA Ins. Code § 790.03(h) -Against Travelers, Matt Knifton, Matt Gentile, Alan Schnitzer

(1) CA Ins. Code § 790.03(h)(l) – Misrepresentation;

(2) CA Ins. Code§ 790.03(h)(3)- Denying without basis;

(3) CA Ins. Code § 790.03(h)(7) - Failure to affirm/deny within 40 days;

(4) CA Ins. Code§ 790.03(h)(8) - Failure to attempt good faith settlement

(5) CA Ins. Code§ 790.03(h)(13)- Failure to pay/deny within 40 days; (6) CA Ins. Code § 790.03(h)(14) - Failure to explain denial;

(E) Unruh Civil Rights Act - CA Civil Code § 51 - Against City

(1) CA Civil Code§ 51-4,000 minimum statutory damages per plaintiff, for a total of 12,000 for all three Plaintiffs;

(F) Bane Civil Rights Act - CA Civil Code § 52 -Against City

(1) CA Civil Code§ 52 - 25,000 minimum statutory damages per plaintiff, for a total of 75,000 for all three Plaintiffs;

(G) Habitability Violations - CA Civil Code § 1941.1-Against City

(1) Failure to provide water supply;

(H) Constructive Eviction - Against City (The City made the property uninhabitable to force Plaintiff out);

(I) Wrongful Foreclosure - Against Carrington

(1) Carrington violated foreclosure procedures;

(2) Carrington engaged in dual tracking - CA Civil Code § 2923.55 (50,000 statutory damages per plaintiff, for a total of 150,000 for all three Plaintiffs);

(J) Fraud -Against Carrington, Fraudulent Buyers

(1) Misrepresentation;

(2) Forgery;

(3) Theft by false pretenses;

(K) Intentional Infliction of Emotional Distress -Against All Defendants (Extreme and outrageous conduct caused severe emotional distress(;

(L) Negligence - Against All Defendants (Duty breached, causing harm);

(M) Constructive Trust -Against Carrington, VA (Recover stolen equity ($105,000+));

(N) Quiet Title -Against Carrington, VA

(1) Quiet title to the property.

(SAC at 7–9).

As to relief, Plaintiffs request the following in damages:

//

| Category | Amount |
| --- | --- |
| Water Code Penalties (3 plaintiffs x $330,000) | $990,000 |
| Bane Act (3 plaintiffs x $25,000) | $75,000 |
| Unruh Act (3 plaintiffs x $4,000) | $12,000 |
| Wrongful Foreclosure (3 plaintiffs x $50,000) | $150,000 |
| IIED / Emotional Distress (3 plaintiffs) | $9,000,000 |
| Compensatory Damages | $9,790,000 |
| Statutory Damages | $57,410,000 |
| Punitive Damages | $173,500,000 |
| Equitable Relief | $315,000 |
| Attorney's Fees & Costs | $2,000,000 |
| Prejudgment Interest | $500,000 |
| **TOTAL (Before RICO)** | **$253,742,000** |
| RICO Treble (3x Economic Damages) | $201,600,000 |
| **GRAND TOTAL** | **$455,342,000** |

(*Id.* at 10). Plaintiffs also request a declaratory judgment that Defendants violated Plaintiffs' rights; prejudgment and post-judgement interest, reasonable attorney's fees and costs; a permanent injunction "a. Restoring water to the property, Freezing all foreclosure/eviction actions, c. Prohibiting further code enforcement harassment;" a constructive trust over stolen equity; and quiet title to the property. (*Id.* at 10–11).

## III. DISCUSSION

The undersigned has identified various deficiencies, many of which were identified in the undersigned's original screening order, that give rise to the undersigned's finding that Plaintiffs do not state a claim or establish federal jurisdiction and therefore this case should be dismissed without leave to amend.

### A. Jurisdiction

The only potential federal claims that appear on the face of Plaintiffs' SAC are the RICO claim and the 42 U.S.C. § 1983 claim for violations of the Fourteenth Amendment's Due Process and Equal Protection guarantees, as well as the Fifth Amendment's Takings Clause.

Starting with the RICO claim, the undersigned finds that Plaintiffs SAC falls far short of the pleading requirements for a RICO claim. To state a claim under RICO, a plaintiff "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007). "Racketeering activity is an act indictable

under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud, and obstruction of justice." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). A "pattern" requires at least two acts of racketeering activity within ten years of one another. *Id.* (citing 18 U.S.C. § 1961(5)). A plaintiff must also allege that the predicates are related and "that they amount to or pose a threat of continued criminal activity." *Id.* The undersigned finds that Plaintiffs' allegations are conclusory and fail to state a claim under RICO. *See Ryan v. Spiro*, No. 2:25-CV-01245-DAD-SCR, 2025 WL 3140679, at *3 (E.D. Cal. Nov. 10, 2025).

As to Plaintiffs' section 1983 claims, the undersigned finds they are not viable. Section 1983 provides:

> [e]very person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a claim pursuant to section 1983, a plaintiff must plead facts indicating that the defendant acted under color of state law at the time the act complained of was committed and that the defendant deprived the plaintiff of the rights, privileges, or immunities secured by the Constitution or laws of the United States. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). But as discussed *infra*, Plaintiffs provide only a "shotgun pleading," providing only a conclusory allegation that "[t]he individual City officials acted with deliberate indifference to Plaintiffs'· constitutional rights. The water shutoffs and targeted code enforcement harassment were not random acts but were driven by an official municipal policy, custom, or failure to train city staff (Monell Claim)." (SAC at 8). But conclusory allegations are insufficient to state a claim. *See Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996). Moreover, Plaintiffs do not provide any theory as to how this conclusory allegation relates to the constitutional rights Plaintiffs allege were violated. The undersigned finds that Plaintiffs have not stated a claim under section 1983.

Because the undersigned finds that Plaintiffs have failed to state a federal claim, Plaintiffs have not established a basis for supplemental jurisdiction over their remaining state law claims. *See Acri v. Varian Assocs.*, Inc., 114 F.3d 999, 1001 (9th Cir. 1997) ("[t]he Supreme Court has

stated, and we have often repeated, that 'in the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point towards declining to exercise jurisdiction over the remaining state-law claims'") (citation omitted).

**B. Rule 8**

Rule 8 states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs' SAC violates Rule 8 because it does not contain a short and plain statement of the claim demonstrating that they are entitled to relief. Although the Federal Rules use a flexible pleading policy, Plaintiffs are required to give fair notice to Defendants of the basis of the claim and must allege facts that support the elements of the claim plainly and succinctly. A complaint must contain sufficient factual allegations to give a defendant fair notice of the claim and the grounds upon which it rests. *Twombly*, 550 U.S. at 555.

As with Plaintiffs' last complaint, the undersigned finds that Plaintiffs' SAC is an impermissible "shotgun" pleading. A "[s]hotgun pleading occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims and does not identify which specific facts are allocated to which claim." *Hughey v. Drummond*, No. 2:14–cv–00037–TLN–AC, 2014 WL 5797365, at *5 (E.D. Cal. Nov. 6, 2014) (citation omitted).

Again, the SAC alleges various claims, but it is not clear *what* facts relate to *which* claim or *which* defendant, or *how* the facts relate to the legal claims raised. Plaintiffs make conclusory allegations of wrongdoing but do not explain *how* the various alleged wrongful actions were wrongful in a way that is legally cognizable or otherwise give rise to the claims pleaded. The undersigned finds that Plaintiffs' complaint fails to give Defendant "fair notice" of the claims against which Defendants must defend and the facts and legal theories that give rise to the claims. *See* Fed. R. Civ. P. 8(a)(2); *Brazil*, 66 F.3d at 199; *McKeever*, 932 F.2d at 798.

Therefore, the undersigned finds that Plaintiffs have not stated a claim as their SAC fails to meet the requirements of Rule 8.

**C. Rule 11**

Plaintiffs have again failed to comply with Federal Rule of Civil Procedure 11(a), which requires all Plaintiffs to sign the complaint.

**D. Leave to Amend**

When dismissing a complaint, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted); *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. (9th Cir. 1996). However, once the court has already granted a plaintiff leave to amend a complaint, the court's discretion in determining whether to allow additional opportunities to amend is particularly broad. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616,622 (9th Cir.2 004)); *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

Further amendment is not appropriate in this case. When dismissing the initial complaint, the undersigned advised Plaintiffs could file an amended complaint if they believed that they could "specify their claims with additional factual allegations." (Doc. 13 at 5). Plaintiffs have repeatedly demonstrated that they are unable to follow this Court's orders or marshal facts sufficient to constitute a cognizable claim and that the addition of more detailed factual allegations or revision of Plaintiffs' claims will not cure the defects of their amended complaint. Thus, the undersigned declines to recommend any further leave to amend and recommends that the action be dismissed.

## IV. CONCLUSION & RECOMMENDATION

Accordingly, the Clerk of Court is hereby DIRECTED to file the Second Amended Complaint, (Doc. 26), and to serve a copy of this order on Plaintiffs at their last known addresses as listed on the docket. It is further RECOMMENDED that (1) Plaintiff's Second Amended Complaint, (Doc. 8), be DISMISSED without further leave to amend. It is further recommended that the Court DIRECT the Clerk of Court to terminate any remaining motions as moot.

These findings and recommendations are submitted to the district judge assigned to this

action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendation with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated: **August 20, 2026**

Erin Sny Castillo

UNITED STATES MAGISTRATE JUDGE